01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08

09 BOARD OF TRUSTEES OF THE )
NORTHWEST METAL CRAFTS TRUST )  CASE NO. C12-1676-MAT
FUND, )

10 )
Plaintiff, )  ORDER GRANTING

11 )  PLAINTIFF'S MOTION FOR
v. )  SUMMARY JUDGMENT

12 )
SWEED MACHINERY, INC., )

13 )
Defendant. )

14 _____ )

15                          <u>INTRODUCTION</u>

16          Plaintiff Board of Trustees of the Northwest Metal Crafts Trust Fund ("Trust Fund")

17 moves the Court for summary judgment against defendant Sweed Machinery, Inc. ("Sweed").

18 (Dkt. 11.)   This matter was brought pursuant to the Employee Retirement Income Security

19 Act, 29 U.S.C. § 1001, *et seq*. (ERISA), and the Labor Management Relations Act, 29 U.S.C.

20 §§ 185 and 186(c) (LMRA).   Plaintiff seeks outstanding fringe benefit contributions,

21 liquidated damages, and interest for hours worked by Sweed's employees during the period of

22 October 1, 2007 through June 30, 2011, and the costs and attorney's fees incurred to bring suit.

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -1

01  Defendant opposes the motion.   (Dkt. 16.)   Having considered the arguments raised in support

02  and in opposition to the motion, along with the remainder of the record, the Court finds plaintiff

03  entitled to summary judgment.

04                                    BACKGROUND

05      The Trust Fund is funded by contributions from participating employers on behalf of

06  covered participants, made pursuant to a collective bargaining agreement ("CBA") between the

07  employers and the International Brotherhood of Boilermakers, Iron Ship Builders, Forgers and

08  Helpers Local 104 AFL-CIO ("Local 104").   (Dkt. 13, ¶¶ 2-3.)   It provides medical, dental,

09  and other benefits to employees covered by the CBA, and their dependents.   (*Id.*, ¶ 4.)

10      Local 104 and Sweed have been parties to a CBA, or Shop Work Agreement, since

11  2007.   (Dkt. 14, ¶¶2-4 and Exs. A & B.)   The CBA incorporates the terms of the Trust

12  Agreement governing the Trust Fund, and requires all signatory employers to report and pay

13  monthly contributions for eligible employees.   (Dkt. 13, Ex. B and Dkt. 14, Ex. A.)   The Trust

14  Agreement contains terms as to damages owed as a result of any delinquent contributions,

15  including interest on unpaid contributions, liquidated damages, and attorney's fees and costs.

16  (Dkt. 13, Ex. B at Article IX, Sections 5-6.)

17      The Trust Fund seeks the payment of delinquent contributions for certain employees

18  during the period of October 1, 2007 through June 30, 2011, as governed by the CBA in effect

19  during that time period.   (Dkts. 13-15.)   It maintains Sweed's liability for $2,943.68 in

20  delinquent contributions, $441.55 in liquidated damages, $2,232.98 in interest, and $5,641.25

21  in costs and attorney's fees associated with this action.   (*Id.*)   Sweed denies liability,

22  maintaining an absence of delinquent contributions under the CBA.

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -2

01                                    <u>DISCUSSION</u>

02          Summary judgment is appropriate when a "movant shows that there is no genuine

03   dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.

04   R. Civ. P. 56(a).   The moving party is entitled to judgment as a matter of law when the

05   nonmoving party fails to make a sufficient showing on an essential element of his case with

06   respect to which he has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

07   (1986).   The Court must draw all reasonable inferences in favor of the nonmoving party.

08   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

09          This matter concerns Sweed's obligations under ERISA.   ERISA requires participating

10   employers to make contributions to a multi-employer trust fund in accordance with the contract

11   and trust agreement.   ERISA Section 515, 29 U.S.C. § 1145.   ERISA provides specific

12   mandatory remedies for delinquent contributions, including, in addition to the unpaid

13   contributions, liquidated damages, interest, attorney's fees, and costs.   § 1132(g)(2).   As

14   noted, defendant also signed a trust agreement containing terms as to damages owed as a result

15   of delinquent contributions.

16          The parties do not dispute the facts of this case.   Instead, they disagree as to whether or

17   not the CBA in effect from 2007 through 2011 required Sweed to pay the monthly contributions

18   at issue.   The relevant CBA provision reads as follows:

19          The Employer shall contribute 75% of the premium cost per month to the
            Northwest Metal Crafts Trust on behalf of each covered full time employee.
20          Each covered full time employee shall contribute 25% of the premium cost per
            month to the Northwest Metal Crafts Trust.

21

22   (Dkt. 14, Ex. A at Article XVII, 17.2 Health and Welfare, part A.)

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -3

01       Also relevant to this dispute is the practice followed in submitting contributions on

02  behalf of employees.   As set forth in the Trust Fund's Administrative Services Agreement, an

03  employee becomes eligible to receive benefits "the first day of the second calendar month

04  following the month in which" the employee has accumulated 160 hours in his or her "Hour

05  Bank[.]"  (Dkt. 17, Ex. 17.)  For example, an employee who worked 160 or more hours in

06  March would be eligible to begin receiving benefits in May.  (*Id.*)  As the parties agree, the

07  employer would, in this scenario, pay the employee's monthly premium to the Trust Fund in

08  April 2010 for benefit coverage beginning in May 2010.   (*See* Dkt. 17, ¶20 and Dkt. 20, ¶6; *see*

09  *also* Dkt. 17, Ex. 17 (describing the month between the hours worked and the month eligibility

10  begins as the "Lag Month."))

11       Plaintiff here argues Sweed breached the terms of the CBA by failing to remit

12  contributions for hours worked during the period of October 1, 2007 through June 1, 2011 for

13  seven employees:  David Lara, Mark Meis, Dennis Walsh, Jake Oberle, Charles Schmoll,

14  Patrick Andersen, and Ted Giorgi.   (*See* Dkt. 15, Ex. A.)   Sweed maintains it was not required

15  to pay contributions as a matter of law given that these individuals had been terminated from

16  employment, moved to a non-bargaining position, or opted out of benefits coverage, and,

17  therefore, were not "covered full time employee[s]" as accounted for in the CBA.  (Dkt. 14,

18  Ex. A at Article XVII, 17.2, part A and Dkt. 17, ¶¶23-29).

19       Sweed further maintains the CBA language is, at worst, ambiguous.  Citing to cases

20  governed by standard contract law, Sweed maintains both that such ambiguity renders

21  summary judgment inappropriate, and that the ambiguity works in its favor with consideration

22  of the subsequent acts and conduct of the parties.  The latter argument relies on the fact that,

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -4

01  despite previous disputes with and payment demands from plaintiff, Sweed has never paid

02  premiums in these circumstances.  (Dkt. 16 and Dkt. 17, Exs. 1-16.)  Sweed maintains

03  plaintiff waived its right to collect these fees.  Finally, Sweed posits that common sense

04  dictates it should not be required to pay for benefits for individuals who are no longer

05  employees, contending this represents coverage Sweed "does not need and for which the

06  employee is not entitled[.]"  (Dkt. 16 at 10-11.)    However, for the reasons described below,

07  the Court concludes that Sweed's arguments lack merit.

08         Interpretation of a CBA is a question of law for the Court.  *Assoc'd Plumbing & Mech.*

09  *Contractors, Inc. v. Local 447*, 811 F.2d 480, 481 (9th Cir. 1987).  This process should be

10  viewed within the context of ERISA and the LMRA, rather than a typical contract dispute.

11  *Laborers Health & Welfare Trust Fund v. Westlake Dev.*, 53 F.3d 979, 983 (9th Cir. 1995)

12  ("For reasons of public policy, traditional contract law does not apply with full force in actions

13  brought under [ERISA] to collect delinquent trust fund contributions.") (quoted case omitted);

14  *Northwest Adm'rs, Inc. v. Sacramento Stucco*, 86 F. Supp. 2d 974, 980 (N.D. Cal. 2000) ("A

15  [CBA] is not governed by the same common-law concepts which control private contracts, but

16  rather by the provisions of the [LMRA] and ERISA. Law other than federal labor law may

17  assist in the interpretation of the collective bargaining agreements only if it 'effectuates the

18  policy [that] underlies the federal labor legislation.'") (quoted sources omitted).  The Court's

19  considerations, therefore, include the fact that trust funds, such as the one at issue in this case,

20  exist for the benefit of employees and their dependents.  *Shaw v. Delta Air Lines*, 463 U.S. 85,

21  90-91 (1983) ("ERISA is a comprehensive statute designed to promote the interests of

22  employees and their beneficiaries in employee benefit plans."); *NLRB v. Amax Coal Co., Div.*

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -5

01 *of Amax*, 453 U.S. 322, 329 (1981) ("Congress directed that union welfare funds be established

02 as written formal trusts, and that the assets of the funds be 'held in trust,' and be administered

03 'for the sole and exclusive benefit of the employees . . . and their families and dependents . . .

04 .'") (quoting 29 U. S. C. § 186(c)(5)).

05        Pursuant to Ninth Circuit law, written terms in a CBA "are ambiguous only if multiple

06 reasonable interpretations exist[,]" and the Court "interpret[s] written terms in the context of the

07 entire agreement's language, structure, and stated purpose." *Trs. of the S. Cal. IBEW-NECA*

08 *Pension Trust Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008) (citations omitted).

09 "Litigants cannot isolate terms of a collective bargaining agreement in order to create an

10 ambiguity where none exists." (*Id.* (rejecting employer's contention that CBA's language

11 directing submission of contributions on behalf of "covered employees" applied only to union

12 employees; agreeing that "language, structure, and purpose" of the CBA unambiguously

13 required employer to pay contributions for all workers).

14        Where the language of a CBA is unambiguous, the Court may not consider extrinsic

15 evidence. *Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1157-58 (9th Cir. 2000).

16 However, in interpreting an ambiguous term, the Court may look to "'the parties' intent . . . in

17 light of earlier negotiations, later conduct, related agreements, and industrywide custom.'" *Id.*

18 at 1158 (quoting *Pierce County Hotel Employees & Rest. Employees Health Trust v. Elks*

19 *Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1998)).

20        In this case, it is first questionable whether the CBA language at issue can be reasonably

21 considered ambiguous. The parties present minimal argument on this point, with Sweed

22 pointing to the absence of specific language obligating the contributions sought and the Trust

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -6

01  Fund pointing to the absence of a specific exception on this point.   Neither party addresses any

02  other arguably relevant language in the CBA or Trust Agreement.   (*See, e.g.*, Dkt. 13, Ex. B. at

03  Article II, part 5 (the Trust Agreement defines "[p]articipating employee" to include "any

04  individual employed by a participating employer who is covered by a [CBA] . . . , and for whom

05  the employer makes contributions to the Trust Fund, any individual who may have been so

06  employe[d] but is subsequently laid off, terminated, or retired."))   In any event, even assuming

07  ambiguity, the Court concludes that the CBA language is reasonably interpreted as obligating

08  Sweed to remit contributions on behalf of the employees in question.

09  The Trust Fund provides declarations attesting to the fact that it is standard industry

10  practice for an employer to submit the hours worked by an employee and contributions the

11  month following the month worked by the employee, and to do so even where the employee

12  was terminated at the end of the month worked.   (Dkt. 19, ¶¶6-8 and Dkt. 20, ¶¶ 6-9.)   They

13  explain that this practice ensures that all covered hours are reported to a trust fund and that

14  benefits are provided to employees for the actual hours worked.   (*Id*.)   A declarant further

15  attests that an "opt-out" is not effective until the month following receipt of an opt-out form.

16  (Dkt. 19, ¶15.)

17  In the case of Sweed and the Trust Fund, the practice of delayed reporting and

18  contributions ensures that an employee's hours are added to the employee's "hour bank" and,

19  despite an employee's termination or change in employment status and assuming eligibility is

20  otherwise met, that the employee retains health care until his or her hour bank runs out.   (Dkt.

21  19, ¶¶9-12.)   The Trust Fund's Administrative Services Agreement reflects the intent that an

22  employee retain coverage in this manner, indicating an employee "can accumulate hours for the

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -7

01   current month and up to three additional months of coverage[,]" and "will continue to be

02   insured as long as he has 140 hours or more in his 'Hour Bank.'"   (Dkt. 17, Ex. 17.)

03        Defendant does not present any contrary evidence of industry practice.   Nor is it

04   apparent to the Court such evidence exists.   *See*, *e.g.*, *Alvares v. Erickson*, 514 F.2d 156, 159

05   n.1 (9th Cir. 1975) ("Under the hour bank program, all contributions paid by an employer for an

06   employee, up to a maximum of 840, are credited to that employee's hour bank. For each 140

07   hours of contributions in his bank, the employee receives one month of future paid-up

08   eligibility. After an employee has accrued 840 unused hours in his bank, any additional

09   contributions which the employer may pay for him are forfeited to the general reserves of the

10   trust."); *Sheet Metal Workers' Int'l Ass'n v. Mahoning & Trumbull County Bldg. Trades*

11   *Welfare Fund*, 541 F.2d 636, 638 n. 1 (6th Cir. 1976) ("In 1969, the Fund established an Hour

12   Bank through which an employer's contributions for a particular employee in excess of 1,500

13   hours yearly, up to 120 'extra' hours yearly, would be credited in the employee's Hour Bank to

14   'cover' the employee during certain times in the future when he would not be able to work for a

15   contributing employer."); *Mathers v. Bricklayers & Allied Craftsmen, Local 1*, 779 F. Supp.

16   914, 919 n.4 (W.D. Mich. 1991) ("The trust fund had established an hour bank in which

17   contributions over a certain amount were collected for employees to use during future periods

18   when unable to work for a contributing employer.") (cited source omitted).

19        The Court further finds the evidence of acts and conduct subsequent to the formulation

20   of the governing CBA to argue in favor of the Trust Fund.   Sweed maintains the fact that it did

21   not previously pay premiums for terminated employees, despite the Trust Fund's requests,

22   supports its interpretation of the CBA and demonstrates the Trust Fund's waiver of its right to

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -8

01   collect the fees.   However, in so doing, Sweed ignores its own and the Trust Fund's relevant

02   conduct.   First, rather than supporting a waiver, the evidence provided by Sweed demonstrates

03   the consistency of the Trust Fund's position as to its interpretation of the CBA.   (Dkt. 17, Exs.

04   1-16.)   Second, it is undisputed that, in the current CBA (governing the period of 2012 through

05   2014), Sweed succeeded in including a provision clarifying it would not remit contributions "on

06   behalf of terminated employees for the month following termination of employment."   (Dkt.

07   20, Ex. B at Article XVII, 17.2, part G.)   The Court finds the apparent need for such language,

08   coupled with the consistency of the Trust Fund's efforts to secure outstanding contributions, far

09   more compelling in the resolution of any ambiguity than the mere fact that Sweed successfully

10   avoided remitting contributions in the past.

11        Finally, Sweed's contention that common sense dictates a ruling in its favor is

12   untenable.   In suggesting it would be paying for coverage "it does not need" (Dkt. 16 at 11),

13   Sweed ignores the fact that the Trust Fund, pursuant to ERISA and the LMRA, exists for the

14   benefit of Sweed's employees and their dependents, not Sweed itself.   Further, the contention

15   that "the employee is not entitled[]" to such coverage ignores the fact that the employee, in fact,

16   earned the very coverage at issue based on work already performed.   *Cf. United States ex rel.*

17   *Sherman v. Carter*, 353 U.S. 210, 220 (1957) ("The trustees are claiming recovery for the sole

18   benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have

19   performed the labor. The contributions are the means by which the fund is maintained for the

20   benefit of the employees and of other construction workers. For purposes of the Miller Act,

21   these contributions are in substance as much 'justly due' to the employees who have earned

22   them as are the wages payable directly to them in cash.")   As argued by the Trust Fund, under

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -9

01 the CBA, the employees were entitled to the benefits earned for hours worked, and Sweed is

02 liable for the contributions it failed to pay for those earned benefits.

03 <u>CONCLUSION</u>

04      The Court finds no issues of fact regarding either the enforceability of the CBA and

05 Trust Agreement or plaintiff's entitlement to the total amount of delinquent trust fund

06 contributions, liquidated damages, and interest sought, as well as to plaintiff's entitlement to

07 attorney's fees and costs.   Accordingly, plaintiff's motion for summary judgment (Dkt. 11) is

08 hereby GRANTED and plaintiff awarded the delinquent contributions, liquidated damages,

09 interest, attorney's fees, and costs requested.   However, because plaintiff calculated the

10 amounts described in its motion as of July 12, 2013, a revised accounting may now be in order.

11 Plaintiff shall submit such information within **ten (10) days** of the date of this Order.

12      DATED this <u>27th</u> day of August, 2013.

13

14                                     _____

                                    Mary Alice Theiler

15                                     Chief United States Magistrate Judge

16

17

18

19

20

21

22

ORDER GRANTING
SUMMARY JUDGMENT
PAGE -10